IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRYAN MAKAN, | ) | CASE NO. 5:12 CV 31 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Bryan Makan, for disability insurance benefits and supplemental security income.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Makan had severe impairments consisting of Reynaud's Disease, status post left wrist surgery for Dequervain's tenosynovitis, cognitive limitations resulting from head injury, borderline intellectual functioning, adjustment disorder, and personality disorder.[1] The ALJ determined, however, that Makan did not have an impairment or combination of impairments that met or medically equaled a listing in Appendix 1 to the

---

[1] Transcript ("Tr.") at 14.

regulations.[2] The ALJ made the following finding regarding Makan's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with the additional limitations that: the claimant should only occasionally push or pull with the dominate left upper extremity; the claimant should never use hand controls with the left hand; the claimant should never climb ladders, ropes or scaffolds; the claimant should avoid concentrated exposure to extreme cold; the claimant should avoid all exposure to operational control of moving machinery and unprotected heights; the claimant should be limited to simple, routine and repetitive tasks; the claimant should work in low stress jobs requiring only occasional decision making and occasional change in work setting; and the claimant should have only occasional interaction with supervisors and co-workers, and no interaction with the general public.[3]

The ALJ decided that Makan had no past relevant work.[4]

Based on an answer to a hypothetical question posed to the vocational expert ("VE") at the hearing incorporating the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Makan could perform.[5] The ALJ, therefore, found Makan not under a disability.[6]

---

[2] *Id.* at 16.

[3] *Id.* at 18.

[4] *Id.* at 24.

[5] *Id.* at 24.

[6] *Id.*

Makan asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Makan raises three issues:

- Does the ALJ's step three finding lack the support of substantial evidence because the ALJ did not reference and analyze whether Makan's physical impairments met or equaled a listing?

- Does the ALJ's RFC finding at step four lack the support of substantial evidence because it does not include speed- and pace-based limitations?

- Does the ALJ's RFC finding at step four lack the support of substantial evidence because it does not include limitations on fingering and handling with the dominant, left hand?

The ALJ's finding of no disability has the support of substantial evidence and, therefore, I will recommend affirming the Commissioner's denial of Makan's applications.

## Analysis

### 1. Standard of review - substantial evidence

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

-3-

>The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[7]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[8] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[9]

I will review the findings of the ALJ at issue here consistent with that deferential standard. The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

**2.      Sequential evaluation process**

To qualify for the benefits sought here, a claimant must establish that he has a medically determinable physical or mental impairment expected to result in death or expected to last for a continuous period of not less than 12 months and that this impairment renders the claimant unable to engage in any substantial gainful employment.[10] The Social Security

---

[7] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[8] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[9] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[10] 42 U.S.C. § 423(d)(1)(A); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009).

Act establishes a five-step sequential evaluation process for evaluating disability claims.[11] The claimant must demonstrate that she is not currently engaged in substantial gainful activity at the time of her applications.[12]  Second, the claimant must present a severe medically determinable physical or mental impairment – *i.e.*, an impairment significantly limiting her physical or mental ability to do basic work activities.[13]  Third, the ALJ must decide if any severe impairment meets or equals one of the listings in Appendix 1 of the regulations for the 12-month durational requirement.[14]  If so, the claimant is presumed disabled.[15]  Fourth, if the claimant's impairment or impairments do not meet or equal a listing, then the ALJ must establish a residual functional capacity for work-related activities and decide if that RFC prevents her from doing her past relevant work.[16]  Fifth, if the RFC precludes past relevant work, then the ALJ must make a finding as to whether other jobs exist in the national economy that the claimant can perform.[17]  The claimant has the burden of proof through step four of the sequential evaluation process.[18]  At step five, the burden shifts

---

[11] *Id.*; *see also*, 20 C.F.R. §§ 404.1520, 416.920.

[12] *Rabbers*, 582 F.3d at 652.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Her v. Comm's of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

to the Commissioner to prove if a substantial number of jobs exists in the national economy that the claimant can perform.[19]

**3.   Does the ALJ's step three finding lack the support of substantial evidence because the ALJ did not reference and analyze whether Makan's physical impairments met or equaled a listing?**

The first issue calls into question the extent of the ALJ's duty to undertake step three analysis with respect to impairments identified as "severe" at step two. In this case, the ALJ included both mental and physical impairments in the step two finding.[20] At step three, he only identified and analyzed the mental impairments, finding that none met or equaled a listing.[21]

Makan did not raise any issue regarding listings and physical impairments at the hearing before the ALJ[22] or on appeal to the Appeals Council.[23] Despite this, and the burden of proof with the claimant at step three,[24] Makan argues for the application of a bright line rule that would require the ALJ to undertake listing analysis for every impairment found

---

[19] *Id.*

[20] Tr. at 14.

[21] *Id.* at 16-18.

[22] *Id.* at 39, 69.

[23] *Id.* at 342-45.

[24] *Her*, 203 F.3d at 391.

severe at step two. Makan relies on the Sixth Circuit's decision in *Reynolds v. Commissioner of Social Security*,[25] and its progeny, to support his position.

The Commissioner counters that no such bright line rule exists. While conceding that the ALJ made no step three analysis of physical impairments found severe at step two, he maintains that the ALJ committed no reversible error because a state agency reviewing physician gave an opinion that Makan's impairments did not meet or equal a listing, and Makan has failed to make a threshold showing that his physical impairments met or equaled an impairment.

*Reynolds* has spawned a number of recent opinions from this Court addressing the sufficiency of analysis at step three.[26] These decisions are not necessarily consistent and are somewhat difficult to completely reconcile. The step three issues determined in these cases arose in dissimilar contexts and are perhaps best understood on a continuum. Cases involving no effort by claimant's counsel to raise a listing argument before judicial review appear on

---

[25] *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411 (6th Cir. 2011).

[26] *Bacon v. Astrue*, No. 1:11-cv-1805, 2012 WL 3112366, at *3-4 (N.D. Ohio July 31, 2012), *Grohoske v. Comm'r of Soc. Sec.*, 3:11 CV 410, 2012 WL 2931400, at *3 (N.D. Ohio July 18, 2012), *Newsome v. Astrue,* No. 1:11CV2073, 2012 WL 2872154, at *6 (N.D. Ohio July 12, 2012), *Tresenrider v. Comm'r of Soc. Sec.*, No. 5:11-CV-1653, 2012 WL 2412113, at *3-5 (N.D. Ohio June 8, 2012),   *Todd v. Astrue*, No. 1:11-cv-1099, 2012 WL 2576435, at *9-10 (N.D. Ohio May 15, 2012), *Jones v. Comm'r of Soc. Sec.*, No. 5:10 CV 2621, 2012 WL 946997, at *7-8 (N.D. Ohio March 20, 2012), *Hakkarainen v. Astrue*, No. 1:10-cv-2463, 2012 WL 398595, at *12-13 (N.D. Ohio Jan. 19, 2012), *Hunter v. Astrue*, No. 1:09 CV 2790, 2011 WL 6440762, at *3-4 (N.D. Ohio Dec. 20, 2011), *May v. Astrue*, No. 4:10CV1533, 2011 WL 3490186, at *8-9 (N.D. Ohio June 1, 2011).

one side of the continuum; those in which counsel raised the argument administratively appear on the other side.

*Bacon v. Astrue*[27] exemplifies those cases requiring minimal analysis and articulation of step two impairments not raised as meeting or equaling a listing at step three during the administrative process. In that case, the claimant did not identify the listing she claims she met.[28] The ALJ provided a lengthy analysis as to mental impairments at the listings but did not elaborate upon physical impairments.[29]

In upholding the ALJ's step three finding, the court underscored that the claimant has the burden at step three and, inconsistent with that burden, the claimant did not identify the listings at issue for the ALJ. "Although an ALJ is required to compare the claimant's medical evidence to the requirements of listed impairments in ST3 'it is the claimant's burden to show that he meets or medically equals impairment in the Listings.' Here *Bacon* never identified what Listing(s) she claims to meet."[30] The court also noted the ALJ's proper reliance upon the listing opinion of the Bureau of Disability Determination medical consultants as part of the administrative review process.[31]

---

[27] *Bacon*, 2012 WL 3112366.

[28] *Id.* at *4.

[29] *Id.* at *3.

[30] *Id.* at *4.

[31] *Id. Also*, *Todd*, 2012 WL 2576435, at *10.

Consistent with the approach taken by the court in *Bacon*, I expressed concerns about reversing an ALJ's step three decision based on listing issues raised for the first time on judicial review. In my opinion in *Jones v. Commissioner of Social Security*:[32]

> Moreover, I am concerned that an over-broad reading of *Bledsoe* and *Reynolds* would impose affirmative duties on an ALJ to analyze listings not suggested, much less pressed, by the claimant with a burden of proof despite the presence of a medical expert opinion rendered after review of the entire medical record. This creates the very real risk that the claimant, who has the burden at step three, will be rewarded for deliberately choosing not to raise specific listing arguments at the hearing. Just as the Commissioner is not entitled to take advantage of *post hoc* analysis to put something into an ALJ's opinion that was not there originally, so, too, should reviewing courts be concerned that claimants not seek to profit from doing likewise.[33]

*Tresenrider v. Commissioner of Social Security*[34] and *May v. Astrue*[35] represent the cases on the other end of the continuum. In both, the claimant raised the listing issue at the hearing before the ALJ.[36] In *Tresenrider*, the ALJ made the conclusory statement that the claimant's impairments did not meet or equal a listing but identified no specific listings and provided no elaboration on why the impairments did not meet or equal a listing level.[37] In *May*, the ALJ analyzed the claimant's mental impairments but provided no analysis of

---

[32] *Jones*, 2012 WL 946997.

[33] *Id.* at *8.

[34] *Tresenrider*, 2012 WL 2412113.

[35] *May*, 2011 WL 3490186.

[36] *Tresenrider*, 2012 WL 2412113, at *3; *May*, 2011 WL 3490186, at *8.

[37] *Tresenrider*, 2012 WL 2412113, at *4.

physical impairments. In both cases, the court remanded for further articulation and analysis at step three.

The Sixth Circuit in *Malone v. Commissioner of Social Security*[38] recently applied the analytical model used by this Court in the *Bacon* decision in affirming this Court's decision finding no error in an ALJ's step three findings.

In *Malone*, the ALJ found at step three that the claimant did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments.[39] The ALJ's decision contained no analysis beyond the finding.[40] As the Sixth Circuit noted in its opinion, Malone did not argue that he had a listing impairment at the administrative hearing.[41] After emphasizing the claimant's burden at step three,[42] the Sixth Circuit found the ALJ's step three finding supported by substantial evidence based upon the report of the state agency reviewing physician.[43]

---

[38] *Malone v. Comm'r of Soc. Sec.*, No. 12-3028, 2012 WL 5974463 (6th Cir. Nov. 29, 2012).

[39] *Malone v. Comm'r of Soc. Soc.*, No. 1:10cv837, ECF # 11 [Transcript ("Tr.")] at 16 (N.D. Ohio).

[40] *Id.*

[41] *Malone*, 2012 WL 5974463, at *2.

[42] *Id.*, at *1.

[43] *Id.*, at *2.

Applying *Malone*, and derivatively *Bacon*, here, Makan made no argument administratively that his physical impairments rose to the listing level.[44] The ALJ went beyond that done in *Malone* by identifying listings relating to Makan's mental impairments and analyzing those impairments in light of the listing requirements. Makan does not challenge this portion of the ALJ's step three decision. As in *Malone*, the ALJ's step three finding is supported by the Disability Determination and Transmittal forms prepared by the state agency reviewing physician.[45] Accordingly, Makan failed to meet his burden at step three, and the decision of the ALJ does have the support of substantial evidence.

Although it may not be possible to formulate a bright line rule for the application of *Reynolds*, a review of the case authority cited above does suggest best practices for claimants' counsel and ALJs at step three. At the hearing, the ALJ should ask counsel for the claimant to identify any severe impairments claimed to meet or equal a listing and the listing applicable to each. With respect to any impairments in a listing so identified, the ALJ should then analyze and articulate, consistent with *Reynolds*, as fleshed out by such cases as *Tresenrider* and *May*. Observation of these practices will greatly assist with judicial review of step three issues.

---

[44] Tr. at 39, 69, and 342-45.

[45] *Id.* at 51-52.

-11-

**4.     Does the ALJ's RFC finding at step four lack the support of substantial evidence because it does not include speed- and pace-based limitations?**

The second issue challenges the ALJ's RFC finding at step four, because it does not include what Makan characterizes as the speed- and pace-based limitations. He rests this challenge on the Sixth Circuit's opinion in *Ealy v. Commissioner of Social Security*.[46]

The ALJ in both his step three[47] and step four[48] analyses found that Makan had moderate impairment in concentration, persistence, or pace. This is consistent with the opinion of the state agency reviewing psychologist, Karen Stailey-Steiger, Ph.D.[49] Additionally, Dr. Stailey-Steiger noted that Makan had moderate difficulty in tolerating normal job stressors.[50]

The ALJ addressed these limitations by including in the RFC finding a provision for simple, routine, and repetitive tasks and work in low stress jobs requiring only occasional decision making and occasional change in work setting.[51] He incorporated these limitations in his hypothetical to the VE.[52]

---

[46] *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010).

[47] Tr. at 17.

[48] *Id.* at 24.

[49] *Id.* at 559.

[50] *Id.*

[51] *Id.* at 18.

[52] *Id.* at 65-66.

In *Raymond v. Commissioner of Social Security*,[53] I discussed at some length *Ealy* and cases in this District endeavoring to apply *Ealy*. I incorporate my analysis in that decision by reference. As stated in *Raymond*, the law in this District on the application of *Ealy* is "in the developmental stage" and under certain circumstances a moderate impairment in concentration, persistence, or pace, *per se*, does not require RFC limitations beyond simple repetitive work.

> The law in this District on the proper application of *Ealy* remains in the developmental stages shown by the authorities cited by the parties in support of their respective arguments. It appears that a finding of moderate impairment in concentration, persistence, or pace, standing alone, will not render a limitation to simple repetitive work inadequate. On the other hand, a finding of speed or pace restrictions, or durational restrictions (as in *Ealy*), will necessitate greater, specific limitations in the RFC and hypothetical.[54]

In this case, the moderate impairment in concentration, persistence, or pace opined by Dr. Stailey-Steiger was coupled with a moderate difficulty in tolerating normal job stressors.[55] The ALJ included stress-related limitations in both the RFC[56] and in the hypothetical posed to the VE.[57] These limitations were in addition to a limitation to simple,

---

[53] *Raymond v. Comm'r of Soc. Sec.*, No. 1:11CV156, 2012 WL 2872152, at *2-4 (N.D. Ohio June 4, 2012).

[54] *Id.*, at *3.

[55] Tr. at 559.

[56] *Id.* at 18.

[57] *Id.* at 65.

-13-

routine, and repetitive tasks.[58] As such, the ALJ satisfied the requirements of *Ealy*, and his RFC finding and hypothetical to the VE have the support of substantial evidence.

**5.    Does the ALJ's RFC finding at step four lack the support of substantial evidence because it does not include limitations on fingering and handling with the dominant, left hand?**

The ALJ found at step two that Makan has a severe impairment status post left wrist surgery for Dequervain's tenosynovitis.[59] He did not, however, include in the RFC finding any limitation on fingering or handling with the left hand.[60]

The ALJ did extensively discuss the surgery that Makan underwent in May of 2008 to address his tenosynovitis.[61] In doing so, he relied heavily upon the examinations and observations of Gregory Hill, D.O., Makan's treating physician.[62] Bottom line, Dr. Hill concluded that it was questionable whether Makan was giving 100% effort to rehabilitation, that his complaints were vague, and that the objective examination findings were relatively normal.[63] Nevertheless, the ALJ incorporated into the RFC limitations on pushing and pulling with the left upper extremity and on never using hand controls with the left hand.[64]

---

[58] *Id.* at 18, 65.

[59] *Id.* at 14.

[60] *Id.* at 18.

[61] *Id.* at 18-19.

[62] *Id.* at 19-20.

[63] *Id.*

[64] *Id.*

Makan's argument rests on a consultative examination done by Lokendra Sahgal, M.D. on August 26, 2008, within three months of surgery on Makan's left hand.[65] In the opinion, Dr. Sahgal concludes that Makan has poor grip and diminished grasp in the left hand.[66] Manual muscle testing of the left hand was abnormal though reliable.[67] The state agency reviewing physician, Anton Freihofner, M.D., in an evaluation done in October of 2008, rated Makan as limited to occasional fingering and handling with the left upper extremity.[68] The ALJ gave Dr. Sahgal's opinion some weight.[69] He noted that the state agency reviewing physician's assessment did not have the benefit of evidence added later, which would include treatment records in 2009.[70]

Given the extensive discussion of the notes and findings of the treating physician for the period of time extending almost a year following Makan's surgery on his left wrist, and the objective medical evidence reflected in those treatment records, the ALJ did not err by not including a restriction to fingering and handling noted by the state agency reviewing physician less than six months after the surgery. Under the regulations and the case law, objective medical evidence generated by the treating physician is preferred, particularly

---

[65] *Id.* at 606-12.

[66] *Id.* at 608.

[67] *Id.* at 609.

[68] *Id.* at 688.

[69] *Id.* at 22.

[70] *Id.* at 23.

where the treating source can provide a longitudinal picture of an impairment because of the length of the treatment relationship and the frequency of examination.[71] Although the opinions of Drs. Sahgal and Freihofner may support the greater limitations urged by Makan, the evidence cited by the ALJ from Dr. Hill is such that a reasonable mind might accept it as adequate to support the RFC finding. That finding, therefore, has the support of substantial evidence.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Makan had no disability. Accordingly, I recommend that the decision of the Commissioner denying Makan disability insurance benefits and supplemental security income be affirmed.

Dated: December 26, 2012                     s/ William H. Baughman, Jr.
                                             United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[72]

---

[71] 20 C.F.R. § 404.1527(c)(2)(i).

[72] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).